IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KENNETH CLAY | § | |
| | § | |
| V. | § | A-19-CV-1241-RP |
| | § | |
| BOBBY LUMPKIN[1] | § | |

# ORDER

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Respondent's Answer (Document 12); and Petitioner's response thereto (Document 17). Petitioner, proceeding pro se, has been granted leave to proceed in forma pauperis. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

**A.  Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 21st Judicial District Court of Bastrop County, Texas, in cause number 16686. In that cause, Petitioner pleaded guilty to the second-degree felony offense of possession of a controlled substance. On April 17, 2019, Petitioner was sentenced to three years' imprisonment for a crime that was committed on December 31, 2017. The trial court awarded 469

---

[1] The previous named respondent in this action was Lorie Davis. Bobby Lumpkin succeeded Davis as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d) of the Federal Rules of Civil Procedure, Lumpkin is automatically substituted as a party.

days of jail time credit. Petitioner's sentence begin date was calculated as January 3, 2018, and his three-year sentence will expire on January 2, 2021.

Respondent also had lawful and valid custody of Petitioner pursuant to a judgment and sentence from the 450th Judicial District of Travis County, Texas, in cause number D-1-DC-18-202378. In that cause Petitioner pleaded guilty to fraud, use and possession of identification information. On October 9, 2018, Petitioner was sentenced to two years' imprisonment for a crime that was committed on April 3, 2018. In that case Petitioner's sentence begin date was April 3, 2018, the same as his offense date. His two-year sentence expired April 2, 2020.

On December 4, 2018, Petitioner was notified that he would be considered for release to discretionary mandatory supervision on the two-year sentence, as Petitioner had not yet received his three-year sentence. At that time, he was provided the opportunity to submit any information he wanted the Board to consider when making its decision. On February 2, 2019, the Board denied Petitioner's release. The Board cited specific reasons for the denial. The Board also reviewed Petitioner for parole release and provided Petitioner a "serve all" notification the same day.

On October 15, 2019, Petitioner was notified that he would be considered for release to discretionary mandatory supervision. He was again provided the opportunity to submit any information he wanted the Board to consider. On January 7, 2020, the Board denied Petitioner's release and specified the reasons for the denial.

**B.    Petitioner's Grounds for Relief**

Petitioner does not challenge either of his convictions. Rather, Petitioner argues:

1. He received no written notice of his minimum release date that is required under House Bill 1433; and

      2.      His due process rights have been violated because TDCJ-CID refuses to acknowledge his three-year sentence.

Petitioner's claims center on his return to TDCJ after receiving his three-year sentence out of Bastrop County. Petitioner asserts he returned to TDCJ on or about May 17, 2019, and he was not given a new TDCJ ID number upon his return. Instead, he was given the same number he was using when he was bench warranted to Bastrop County. According to Petitioner, he spoke to the supervisor, who told him his "minimum date" was May 23, 2019. Petitioner insists because this date was not provided to him in writing he should have been released on that date. Although his arguments are not clear, it appears Petitioner is complaining that he was not reviewed for discretionary mandatory supervision or parole for his three-year sentence immediately upon his return to TDCJ.

**C.    Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent shows that Petitioner raised these claims in a state application for habeas corpus relief. The Texas Court of Criminal Appeals denied Petitioner's state application without written order on October 16, 2019. *Ex parte Clay*, No. 54,591-02.

## DISCUSSION AND ANALYSIS

**A.    The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act. *See Harrington v. Richter*, 562 U.S. 86, 97–100 (2011). The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 562 U.S. at 98.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.* Following all of the Courts of Appeals' decisions on this question, *Harrington* concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted). The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)). When there is no explanation with a state court decision, the petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.* And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

As *Harrington* noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by § 2254(e), which states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. *Id.*

**B.      Merits**

"HB 1433" was legislation proposed in 1995 in the Texas House of Representatives that amended Section 8(c) of Article 42.18 of the Texas Code of Criminal Procedure in two respects: (1) it prevented those previously convicted of crimes ineligible for mandatory supervision from eligibility for any future conviction, regardless of the current offense, and (2) it provided the Board of Pardons and Parole with the authority to review all inmates eligible for mandatory supervision to determine if they should, in fact, be released to mandatory supervision. Specifically, the legislation provided a discretionary aspect to mandatory supervised release by authorizing the Board to prevent the prisoner's release to mandatory supervision if the panel determines (1) the prisoner's accrued good conduct time is not an accurate reflection of their potential for rehabilitation, and (2) that their release would unreasonably endanger the public. The legislation eventually became effective September 1, 1996.

"Mandatory supervision" is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T. CODE § 508.001(5). Whereas an inmate's release on parole is wholly discretionary, an inmate's release on mandatory supervision is required, subject to the exceptions noted above,[2] when the "actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." *Id.* at § 508.147(a); *Jackson v. Johnson*, 475 F.3d 261, 263, n. 1 (5th Cir. 2007).  As a matter of state law, good and work time credits apply

---

[2]Section 508.149(b) provides that "[a]n inmate may not be released to mandatory supervision if a parole panel determines that: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public." *Id.* § 508.149(b).

6

only to eligibility for parole or mandatory supervision and do not otherwise have any effect on the length of sentence imposed on an inmate. *See Ex parte Hallmark*, 883 S.W.2d 672, 674 (Tex. Crim. App. 1994); TEX. GOV'T CODE ANN. § 498.003(a) (Vernon 2004).

Both the Fifth Circuit and the Texas courts have held Texas's post-September 1, 1996 mandatory supervision scheme does create a protected liberty interest. *Teague v. Quarterman*, 482 F.3d 769, 777 (5th Cir. 2007); *Ex parte Geiken*, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000). However, this simply means certain procedural due process protections must be afforded Petitioner by the Board before it decides whether to release him on mandatory supervision. Procedural due process requires, essentially, that Petitioner be given notice and a meaningful opportunity to be heard. *Geiken*, 28 S.W.3d at 560. Additionally, if release is denied, "the inmate must be informed in what respects he falls short of qualifying for early release." *Id.* (citing *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 16 (1979)).

Petitioner fails to show he was not provided notice that he was to be considered for mandatory supervision release, that he was not given a meaningful opportunity to tender information to the Board in support of his release, or that the Board failed to inform him in what respects he fell short of qualifying for early release. After Petitioner was returned from Bastrop County, he was notified in October 2019 that he would be considered for discretionary mandatory supervision, he was provided the opportunity to submit information, and he was provided written reasons for the denial. Petitioner received the process to which he was due under the law with regard to the denial of mandatory supervision.

In the event Petitioner is challenging Respondent's failure to timely review him for parole on his three-year sentence, success on this claim would not entitle him to habeas corpus relief.

Petitioner is currently in the parole review process.  Moreover, a prisoner does not have a federal constitutional right to be released to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Likewise, a Texas prisoner does not have a state-created constitutional right to release to parole. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995); 37 TEX. ADMIN. CODE § 145.3(1) ("Release to parole is a privilege, not an offender right, and the parole decision maker is vested with complete discretion to grant, or to deny parole release."). Because Texas inmates have no protected liberty interest in release to parole, they cannot have a liberty interest in parole consideration or other aspects of parole procedures. *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997) (stating Texas prisoners cannot challenge any state parole review procedure on procedural or substantive due process grounds); *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995) (because a prisoner has no liberty interest in obtaining parole in Texas, he cannot complain of the constitutionality of procedural devices attendant to parole decisions).

## CONCLUSION

The Texas Court of Criminal Appeals denied Petitioner's state application for habeas corpus relief.  Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, Petitioner's claim does not warrant federal habeas relief.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  A certificate of appealability may issue only if a petitioner has made a substantial

showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Court denies Petitioner a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Application for Habeas Corpus Relief is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SIGNED** on October 1, 2020.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE